**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHONDA BROWN-STEWART, | |
| Plaintiff, | Civil Action No. 21-10570 (SDW) (JSA) |
| v. | **OPINION** |
| HACKENSACK MEDICAL UNIVERSITY AND HACKENSACK MERIDIAN HELTH, INC., | January 24, 2024 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Hackensack Medical University Center, and Hackensack Meridian Health, Inc. (collectively "HUMC") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule"). (D.E. 93.) Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, HUMC's motion is **GRANTED**.

**I.  BACKGROUND and PROCEDURAL HISTORY**

HUMC hired Plaintiff on December 7, 2020 as a Nurse in the Labor and Delivery unit ("L&D unit"). (*Id.* at 31.) She was 49 years old at the time with 31 years of prior work experience in the healthcare industry. (D.E. 96 at 1; D.E. 93-1 at 2.) She had been a practicing nurse for six years at other hospitals including in the delivery unit of The Valley Hospital. (*Id.* at 1-2.) At all relevant times, HUMC employed 98 nurses, 46 of whom were over the age of 40 and 25 of which were

1

over the age of 49, the oldest being 83 years old. (D.E. at 4-5.) At the time Plaintiff was hired, HUMC communicated that the position was probationary for 90-days, to allow it time to evaluate her and determine if she had the requisite skillset for the position. (*Id.* at 5-6.) HUMC's policy stated that "[e]mployees who do not successfully complete their introductory period will be terminated." (D.E. 93-14: Feher Cert. Ex. 4 at 1.)

During the probationary period, Plaintiff's work was evaluated by three different employees called "preceptors." Preceptors are not managers but rather peers who assist new hires through orientation and to ensure that patient care standards are met. (D.E. 93-1 at 6.) Shenelle Gooden was Plaintiff's first preceptor for the first six weeks of the probationary period. (*Id.* at 7.) Ms. Gooden's preceptor notes outlined several performance issues she observed with Plaintiff which included poor time management, inefficient multitasking, and inaccurate patient charting. (*Id.*) In response to this feedback, Plaintiff emailed her supervisor to express her concern about the lack of training she received from Ms. Gooden and to request a new preceptor. She stated that the lack of training left her feeling confused and unable to critically think which affected her overall confidence. (D.E. 93–19.) At her deposition she testified that she "found [herself] not being able to do [her] job effectively" and that she "didn't have the right policies and procedures to work at Hackensack," (D.E. 93–22; Pltf. Dep. 40:1–25), despite there being documentation of her signed acknowledgment of having received the polices via HUMC's intranet. (D.E. 93-12.) Plaintiff also testified that she could not recall whether she had been discriminated against by Ms. Gooden. (D.E. 93–22; Pltf. Dep. 36:20–25.)

HUMC honored Plaintiff's request and replaced Ms. Gooden with Yumiko Hussey. (D.E. 93-1 at 8.) At the end of her evaluation period, Ms. Hussey reported: inaccuracies in patient chartings; ineffective time management; inability to effectively multitask; insufficient patient prioritization

skills; inability to employ critical thinking skills; inability to explain patient status to clinical care staff; inaccurate nursing notes and inability to execute patient care. (*Id.* at 8-9.) Ms. Hussey did not recommend Plaintiff's termination and instead suggested that Plaintiff's orientation be extended. (D.E. 93-1 at 9.)

Plaintiff was also evaluated by Indranie Cortez, an operating room nurse. (*Id.* at 10.) Ms. Cortez reported that Plaintiff had difficulties with her assessment process and prioritizing tasks. (*Id.*) Ms. Cortez further stated that she had to frequently remind Plaintiff to do certain tasks or to group tasks together to complete them in a timely manner. (*Id.*)

HUMC management met with Plaintiff on February 23, 2021 to discuss her performance issues. (*Id.*) At this meeting, Plaintiff reported that she felt bullied and discriminated against and that she had reported this to HUMC manager, Maria Thurber. (*Id.*) However, in her deposition she testified that she could not recall any conversations with Ms. Thurber prior to the February 23rd meeting or if she ever reported any issues with staff. (D.E. 93-23; Pltf. Dep. 60:2– 61:25.) Following this meeting, on February 24, 2021, Plaintiff sent an email to the HUMC manager describing her concerns.

With respect to Ms. Hussey, after Plaintiff asked her for an opportunity to prove that she can be trusted to do her job and would not do anything she did not know without first speaking to Ms. Hussey, Plaintiff alleged that, in front of other staff members, Ms. Hussey told her she did not know anything, "not enough to call [herself] an experienced Labor and delivery nurse . . ." (D.E. 93-1 at 11.) In the Complaint, Plaintiff alleged that Ms. Hussey called her "old." (D.E. 1 at 3-4.) She further alleged that Ms. Hussey bullied her, made discriminatory comments referencing her age, demeaned her, disrespected her, and humiliated her in front of staff and patients. (*Id.*) At her deposition Plaintiff testified that Ms. Hussey said that Plaintiff was "unteachable" and asked

3

Plaintiff if the reason Plaintiff refused to learn from her was because she was younger.  (D.E. 93–23; Pltf. Dep. 62:1–25.)

On February 27, 2021, Plaintiff emailed her former manager Jennifer Kopelman to complain of her experience working with Ms. Hussey but did not include any allegations of ageist comments. In both the February 24th and 27th email, Plaintiff acknowledged her performance issues and stated that she is working on her time management skills and that "with time [she] will be faster and able to manage [her] work in a timely and safe manner." (D.E. 93–25.)

On February 26, 2021, HUMC determined that Plaintiff failed to successfully complete the required probationary period and terminated her. [1]  (D.E. 93–1 at 13.)  Plaintiff initiated the instant lawsuit on April 27, 2021 against HUMC claiming age discrimination and retaliation.  After the discovery period closed, Defendants filed this motion for summary judgment. The parties timely completed briefing.  (D.E. 93,96, and 97.)

## II. LEGAL STANDARD

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002); *see* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

[1] "Between 2020 and 2021, HUMC terminated Plaintiff and six other registered nurses for [not successfully completing the probationary period] all prior to the expiration of their respective 90-day probationary periods . . . five of the seven terminated employees were under 40 years old, and therefore outside of the protected age group." (D.E. 93-1 at 6.)

## III.  DISCUSSION

### a. Age Discrimination

Plaintiff's principal claim is that she was terminated because of her age.  "The elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 641 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir.2013)).

"Once the plaintiff has successfully established a prima facie case creating an inference of discrimination, the burden shifts to the employer who must 'articulate a legitimate nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir.1999)).  This second step "does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

"If the employer satisfies this second step, the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Id.* (citing *Burton*, 707 F.3d at 426–27).

### b. Prima Facie Case

Plaintiff easily satisfies the first two elements of the prima facie case because she was 49 years-old at the time HUMC terminated her employment.  *See Willis*, 808 F.3d at 641.  As for the third

5

element, there is no dispute as to whether Plaintiff had relevant prior work experience and—as evidenced by the record and Plaintiff's own statements. However, there is a dispute as to whether Plaintiff was qualified to perform her role with HUMC. The record reveals that Plaintiff did not have the "requisite skills, experience, education, and other job-related requirements for the position" and at various times she admitted as much. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 303 (3d Cir. 2021). During the probationary period—which was designed to evaluate a new hires skillset and ability to perform the job for which they were hired—Plaintiff was told of her poor performance repeatedly. Indeed, all three of the assigned preceptors reported the same performance issues: poor time management; inability to think critically; inability to multitask and inaccuracies in patient charts and nurse notes. Plaintiff acknowledged these performance concerns and stated that "with time" she would develop the requisite skillset. (*See* D.E. 93-25.) However, under the probationary period policy, HUMC was not obligated to provide Plaintiff with time to *develop* this skillset it instead allowed for up to 90-days for her to *demonstrate* and be evaluated on her skills and competence. She did not do so in the 90-days she was given under HUMC's probationary period policy. (*See* D.E. 93-14: Feher Cert. Ex. 4 at 1.) Thus, Plaintiff fails element three of the prima facie case.

Even if Plaintiff was able to satisfy element three, she has not satisfied the final element because she has not demonstrated that she was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. *See Willis*, 808 F.3d at 641. Plaintiff has not alleged or proffered any evidence to show that she was replaced by someone younger than her or that age was a motive in her termination. Instead, the evidence reveals that HUMC employs registered nurses whose ages vary greatly. Plaintiff was one of seven

nurses whose employment was terminated for similar reasons and five of the seven were younger than 40 years old. (D.E. 93-1 at 6; *see* D.E. 93-15.)

Importantly, Plaintiff never reported age discrimination or harassment prior to her termination. None of the preceptors were aware of her age at the time of their evaluation of her work. In neither the meeting with management regarding her poor performance nor any of the subsequent emails to management did Plaintiff report any discrimination. In her emails and her deposition, Plaintiff's only complaint was that she felt Ms. Gooden did not provide her with proper policy and procedure training to be successful in her role and that Ms. Hussey embarrassed her by criticizing her performance in front of other staff members. (*See* D.E. 93–19; D.E. 93–25; D.E. 93–26.) It was not until she filed this lawsuit that Plaintiff complained of ageist remarks and the only remark she alleged was that Ms. Hussey called her "old." (D.E. 1 at 2.) However, at her deposition she testified that Ms. Hussey asked Plaintiff if the reason Plaintiff refused to learn from her was because she was younger. She did not testify to being called "old." (D.E. 93–23; Pltf. Dep. 62:1–25.) This is an important distinction and one that undermines Plaintiff's claims.

Finally, considering all of the facts, this Court finds that no reasonable jury would conclude that Plaintiff was terminated because of her age when she was hired and terminated at the exact same age. Age did not appear to be a concern to HUMC at the time it hired Plaintiff so it is curious that it would be the reason to terminate her. This is especially true when considering the fact that, at the time, HUMC's nursing staff had 98 nurses including 46 nurses over the age of 40 and 25 nurses older than Plaintiff. (D.E. 93–15.) The record reveals that Plaintiff was not terminated because of her age but because she lacked the requisite skillset. Plaintiff has not established a prima facie case for age discrimination and thus, the burden will not shift to HUMC to articulate a legitimate nondiscriminatory reason for the adverse employment action. Even if this Court were

7

to find Plaintiff satisfied her burden of proving a prima face case, HUMC has clearly established a legitimate non-discriminatory reason for terminating Plaintiff as she performed poorly during her probationary period. Accordingly, there are no issues of material fact for a jury to resolve on this claim.

    c.   *Retaliation*

Plaintiff's sets forth a claim for retaliation. To succeed on this claim, Plaintiff must show that: (1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508-09 (3d Cir. 2004). As for the first element, protected activity "includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (C.A.3 (Pa.), 2015) (quoting *Curay–Cramer v. Ursuline Acad. of Wilmington*, Del., Inc., 450 F.3d 130, 135 (3d Cir.2006).[2] Plaintiff fails this element because she did not report age discrimination to anyone at HUMC including management prior to her termination or initiating this action. As for the second element, an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir.2004). Although termination or notice of termination constitutes an

---

[2] see *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276, 129 S.Ct. 846, 851, 172 L.Ed.2d 650 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.".

adverse employment action[3], Plaintiff fails this element because she has not established that she was engaged in a protected activity—such as reporting instances of age discrimination to HUMC's management—to establish that her termination was after or contemporaneous with it. Consequently, Plaintiff also fails the third element because Plaintiff has not established a causal link between her termination and the protected activity because she has not established that she was engaged in a protected activity. Thus, there are no issues of material fact for a jury to resolve on this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

*s/ Susan D. Wigenton*_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
    Jessica S. Allen, U.S.M.J.

---

[3] *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 301 (3d Cir. 2021).